# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     CRIMINAL ACTION

               :

               :

v.              :

               :

DENNIS BURNETT           :

               :      No. 08-201-03

               :

## M E M O R A N D U M

FILED

JUL 1 7 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

PRATTER, J.                                     JULY 17, 2009

        This case presented the question of whether Dennis Burnett knowingly and voluntarily waived certain rights when he signed a proffer agreement prior to meeting with representatives of the U.S. Attorney's Office to tell them about his–and his associates'–criminal conduct. Once Mr. Burnett elected to proceed to trial, the Government moved for the admission, under certain circumstances, of evidence obtained through two proffer sessions in which Mr. Burnett participated. To curtail use of the evidence, Mr. Burnett contended that he did not knowingly and voluntarily waive all of his rights–specifically that he did not understand that the introduction of proffer evidence could be triggered if his attorney presented evidence or argued at trial in a way that contradicted statements made during his proffer sessions. The Court held a hearing on July 13, 2009, at which, for the reasons detailed below, the Court granted in part and denied in part the Government's Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

        On December 16, 2008, a federal grand jury returned a Second Superseding Indictment charging Dennis Burnett with two counts of aiding and abetting substantive Hobbs Act violations, in violation of 18 U.S.C. § 1951(a), (b)(1), and two counts of knowingly using and

carrying (and/or aiding and abetting using and carrying) a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) and 2. This indictment was later amended to add a charge of conspiracy to commit a series of Hobbs Act robberies. In the hopes of negotiating a favorable plea agreement, Mr. Burnett participated in two proffer sessions, one on January 12, 2009, and the other on March 27, 2009, each time presenting detailed information regarding his involvement in the crimes charged.

Immediately prior to the first proffer session on January 12, 2009, Mr. Burnett met with his then-attorney, Mr. David Rudenstein.[1] At the hearing, Mr. Rudenstein testified that he read the proposed proffer agreement aloud to Mr. Burnett,[2] answered Mr. Burnett's questions, and allowed Mr. Burnett time to read the agreement on his own. See July 13, 2009 Hearing Tr. (hereinafter "Tr.") at 19-20. The proffer agreement[3] contained the following provision:

> [I]f your client is a witness or party at any trial or other legal proceedings [sic] and testifies or makes representations through counsel materially different from statements made or information provided during the "off-the-record" proffer, the government may cross-examine your client, introduce rebuttal evidence and make representations based on statements made or information provided during the "off-the-record" proffer.

See Gov't's Mot. In Limine to Admit Admissions Made by Def. During Two Proffer Sessions in

---

[1] Mr. Rudenstein concluded his representation of Mr. Burnett in May of 2009, and new counsel entered his appearance for Mr. Burnett at the same time.

[2] Mr. Burnett disputed Mr. Rudenstein's testimony that Mr. Rudenstein read the agreement aloud to Mr. Burnett, see Tr. at 53, but admitted that Mr. Rudenstein "went over" with him the paragraph at issue in this case, see id. at 59.

[3] As described to the Court, the text of the proffer agreement was in the form used routinely by the U.S. Attorney's Office in this District.

Rebuttal Against Contradictory Evid. or Argument at Trial ("Gov't's Mot."), Ex. A.[4] Mr. Rudenstein testified that in outlining for Mr. Burnett the downside of the agreement, he explained that if Mr. Burnett decided to go to trial, anything Mr. Burnett said at the proffer session could be used to impeach his testimony if he chose to testify on his own behalf at trial. See Tr. at 15-16. Apparently, Mr. Rudenstein did not, however, explicitly outline for Mr. Burnett the impact the proffer agreement might have on counsel's ability to argue or cross-examine witnesses, even if Mr. Burnett should decide not to take the stand. See id. at 21. Mr. Rudenstein testified that he had, however, previously discussed with Mr. Burnett the fact that he as counsel was ethically bound by rules of professional conduct not to make false statements or present false evidence at trial. See id. at 29-30.

Mr. Burnett testified that Mr. Rudenstein did not tell him that the proffer agreement could restrict his attorney at trial and that he would not have signed the agreement if he had fully understood its impact on his attorney. See id. at 49-50. Mr. Burnett did confirm that he read the agreement, but stated that he relied on his attorney's explanation for his understanding of its meaning and import. See id. at 59-60. Both Mr. Burnett and Mr. Rudenstein signed the proffer agreement before Mr. Burnett actually made his statements to the law enforcement personnel.

According to the evidence presented at the hearing, after allowing Mr. Burnett and Mr. Rudenstein time to confer, Assistant United States Attorney Karen Marston joined the pair, along

---

[4] The Government uses the prospect of introducing evidence of the proffer statement when either defendants or their attorneys trigger that introduction as a means of encouraging proffering defendants to be truthful. See Gov't's Mot., Ex. A (stating that the provision regarding the potential introduction of proffer evidence "helps to assure that [the] client does not abuse the opportunity for an 'off-the-record' proffer, make materially false statements to a government agency, commit perjury or offer false evidence at trial or other legal proceedings").

with Special Agent Joseph Majarowitz and Philadelphia Police Detective James Mooney. See id. at 63. Before the interview commenced, Ms. Marston asked if Mr. Burnett had signed and understood the agreement, to which he responded in the affirmative. She also inquired whether Mr. Burnett or his attorney had any questions, to which both responded in the negative, and then the proffer session began. See id.

In March of 2009, Mr. Burnett participated in a second proffer session, which his attorney did not attend. See id. at 51. Before substantively proceeding, Ms. Marston explained that the January 12, 2009 proffer agreement still applied and that if at any time he wished to stop the proffer session or consult his attorney (who was available by cell phone), Mr. Burnett should feel free to do so. See id. at 63-64. Mr. Burnett did not take advantage of either offer, but instead went ahead with the proffer session. See id. at 55.

Ultimately, Mr. Burnett decided to go to trial. As trial approached, the Government filed a number of pre-trial motions, including the instant Motion In Limine, which prompted the hearing described above.

**DISCUSSION**

Under Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(e)(6), statements made during plea negotiations are inadmissible at trial. A defendant can, however, waive the right to preclude the use of these statements, provided that the waiver is knowing and voluntary. See U.S. v. Mezzanatto, 513 U.S. 196 (1995). A waiver is made knowingly if the defendant has a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," and it is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475

4

U.S. 412, 421 (1986). Although Mr. Burnett stated in his opposition to the Government's motion that he accepted the burden to prove that his waiver was not valid, ordinarily the Government must show that a waiver was knowing and voluntary by a preponderance of the evidence. See U.S. v. Paris, No. 3:06-cr-0064 (CFD), 2007 WL 1158118, at *4 (D. Conn. Apr. 18, 2007), citing Colorado v. Connelly, 479 U.S. 157, 168-69 (1986) (holding that the government bore the burden of proof by a preponderance of the evidence to prove a knowing and voluntary waiver of Miranda rights).[5]

The Government's motion sought the admission of Mr. Burnett's proffer statements under certain circumstances, namely, if Mr. Burnett testified or if counsel for Mr. Burnett made representations materially different from the information contained in the proffer statement. The Government noted that even cross-examination of a government witness could trigger the introduction of the proffer statements, if that cross-examination is aimed at creating an inference that differs from the content of the proffer statement. See U.S. v. Hardwick, 544 F.3d 565, 571 (3d Cir. 2008).

In Hardwick, one of the defendants had entered into a proffer agreement before trial. That defendant had admitted to planning and participating in two murders. After the close of the Government's case-in-chief, the Government moved for the admission of the defendant's proffer statements, arguing that by attempting to elicit contradictory evidence through cross-examination, the defendant, through his attorney, had breached the proffer agreement. The trial court granted the Government's motion, and the defendant argued against its admission on

---

[5] The parties themselves did not engage in any contest over burden allocation. Regardless of who bore the burden on this issue, Mr. Burnett was able in this instance to show that his waiver was not a knowing one, and the Government did not prove otherwise.

appeal. Id. at 569. The Third Circuit Court of Appeals, citing Mezzanatto, supra, noted that in

that case, the Supreme Court only dealt with the enforceability of proffer waivers for

impeachment purposes and that some justices had expressed doubt as to whether a waiver could

be used to admit statements in the Government's case-in-chief. See id., citing Mezzanatto, 513

U.S. at 210. However, the court also noted that other circuit courts, addressing the validity of

proffer waivers which went well beyond impeachment and deciding the issue with the guidance

of Mezzanatto, have been unanimous in their treatment of such waivers, in each case upholding

their use. See id. at 570, citing U.S. v. Velez, 354 F.3d 190, 196 (2d Cir. 2004); U.S. v. Krilich,

159 F.3d 1020, 1025-26 (7th Cir. 1998); U.S. v. Rebbe, 314 F.3d 401, 407 (9th Cir. 2002); U.S.

v. Burch, 156 F.3d 1315, 1321-22 (D.C. Cir. 1998). The Third Circuit Court of Appeals then

upheld the trial court's ruling that cross-examination attempting to contradict the specific facts of

the proffer statement triggered the statement's admission. Id. at 570-71.

Mr. Burnett challenged the validity of the waiver in this case, presenting evidence that he

did not understand that the waiver would affect how his attorney could present his case,

essentially muzzling counsel and rendering counsel ineffective during trial. In a very similar

case, the trial court in the Southern District of New York granted in part a motion to preclude use

of proffer statements. See U.S. v. Lauersen, No. 98CR1134(WHP), 2000 WL 1693531

(S.D.N.Y. Nov. 13, 2000). In that case, the defendant's attorney explained the proffer agreement

to the defendant in much the same way that defense counsel here did, namely, counsel told the

defendant that what she said at the proffer session could not be used against her at trial unless she

testified inconsistently with her proffer statements. Id. at *2. The attorney testified that he

himself did not understand that the agreement also applied to representations made by the

attorney in opening, cross-examination, and summation. Likewise, the prosecutor present at the proffer meeting did not fully explain this particular point while summarizing the agreement at the proffer session. Id. at *7. Even though the defendant signed the proffer letter, the court held that her waiver as to the use of proffer statements other than to impeach her own testimony was not knowing. Accordingly, the court held that the proffer statement could only be used to impeach the defendant's own testimony, if any. Id. at *8. However, the court also cautioned the defendant's attorney that he would not be permitted "to elicit substantive (non-impeachment) testimony, either on cross-examination of witnesses called by the Government or from witnesses called to testify on her behalf, or to present arguments to the jury at any stage of the proceeding, including opening statements, that directly contradict specific factual statements made by [defendant] in the FBI-302 statement," because the attorney was bound by rules of professional conduct. Id. at *8.

Here, unlike the attorney in Lauersen, Mr. Rudenstein testified that he did understand the proffer agreement to limit his ability to introduce and argue facts that contradicted statements made in the proffer sessions. See Tr. at 17. However, apparently because he considered that applicable legal ethics rules and principles already constrained his ability to make arguments and introduce evidence contrary to the truth and had discussed this constraint with his client, he did not feel the need to discuss the matter again in the context of the proffer letter. Instead, counsel focused his discussion of the proffer agreement's disadvantages on how the agreement would affect Mr. Burnett, that is, that Mr. Burnett could not testify contrary to his proffer statements without the statements being introduced at trial. See id. at 18. Thus, the end result was the same in this case as it was in Lauersen—the defendant may not have fully appreciated the consequences

7

of signing the proffer agreement, with regard to the agreement's effect on his attorney's ability to contradict the proffer statements at trial without triggering their admission.

Other cases addressing this issue can be distinguished from the specific facts here, in that specific evidence proved that either the attorney or the Government's representative at the proffer session explained the full implications of the proffer agreement, despite the defendants' insistence that they did not understand the full ramifications of the agreement (i.e., that the statement could be used even if the defendants did not themselves testify if defense counsel triggered the use). See, e.g., U.S. v. Paris, No. 3:06-cr-0064 (CFD), 2007 WL 1158118 (D. Conn. Apr. 18, 2007) (finding waiver valid when defense counsel explained to his client that proffer admission could be triggered by more than just defendant taking the stand and AUSA explained the proffer agreement in detail, even if defendant's attorney did not specifically state that the proffer statement could be used if counsel cross-examined a witness in a manner contradictory to the proffer statement); U.S. v. Parra, 302 F. Supp. 2d 226, 235 (S.D.N.Y. 2004) (upholding proffer agreement when both lawyer and defense counsel fully explained proffer letter to defendant, despite defendant's assertion that he did not understand it); U.S. v. Avendano, No. 02 CR 1059, 2003 WL 22454664 (S.D.N.Y. Oct. 29, 2003) (finding an intelligent and voluntary waiver when defendant asserted that his counsel only told him that the proffer session was "a chance for him to talk to the Government without having to worry that his statements could be used against him," but the AUSA testified that he reviewed the terms of the proffer agreement with defendant, using illustrative examples).

Because the Court found that Mr. Burnett only clearly understood some of the consequences of the proffer agreement, the Court granted the Government's Motion to introduce

evidence of Mr. Burnett's proffer statements only if Mr. Burnett testified in a manner contradictory to them, but denied the Government's Motion to introduce that evidence should defense counsel argue or introduce evidence contradicting the statements. This does not mean, however, that counsel is without constraints at trial. As Mr. Rudenstein clearly understood, and as the Court is certain current defense counsel also fully appreciates, under the Pennsylvania Rules of Professional Conduct,

> A lawyer shall not knowingly:
> (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
> (3) offer evidence that the lawyer knows to be false. If the lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence before a tribunal or in an ancillary proceeding conducted pursuant to a tribunal's adjudicative authority, such as a deposition, and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

PA Rules of Prof. Conduct 3.3(a). See also PA Rules of Prof. Conduct 3.1, 3.4. In light of these duties, the Court observed that defense counsel ought not "to elicit substantive, that is, non-impeachment testimony, either on cross-examination of witnesses called by the Government or from witnesses called to testify on Mr. Burnett's behalf or to present arguments to the jury at any stage of these proceedings, including opening statements, that directly contradicts the specific factual statements made by Mr. Burnett in the proffer statements as reflected on the FBI 302 statement unless there is some issue determined in a hearing separate and outside the hearing of the jury that the 302 is in some substantive way grievously inaccurate." See Tr. at 98, quoting

Lauersen, 2000 WL 1693538, at *8.[6]

    An appropriate order follows.

BY THE COURT:

GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[6] The Court recognizes the opportunity for frustration this situation presents defense counsel, particularly where there can be insufficient advanced knowledge as to precisely where "the line" defense counsel must mind may be. The issue can be even more difficult for counsel in situations where, as here, one attorney is counseling the defendant at one point and another attorney handles the case for trial. While it may be of limited solace to counsel, the Court must observe that strategic, tactical, ethical and professional challenges such as this are visited upon lawyers in a host of settings. Skilled lawyers such as counsel in this case distinguish themselves–and well serve their clients–precisely because they see the dilemma ahead of time and can try to make the best of the circumstances as presented. At the July 13, 2009 hearing, Mr. Burnett affirmed that he told the truth at the proffer sessions. See Tr. at 50 (Mr. Burnett testified that the proffer statements represented "an honest effort on [his] part to admit to the Government all that [he] had done."). Thus, despite counsel's argument that the proffer agreement would "handcuff" him at trial, counsel is already "handcuffed" by the truth. Indeed, it may well be in this instance that the defendant's waiver through the proffer agreement would not have restricted counsel any more than he was already bound by the rules of professional conduct. Here, the Court acknowledges that the professional frustration is not limited to defense counsel. Unexpectedly, the prosecutor's benign use of a customary form proffer letter risked undermining the bargained for benefits because of a situational insufficiency of the defendant's acknowledgment of his waiver of his rights. Given that it is hardly a difficult challenge to utilize a more secure "belt and suspenders" approach to making sure a defendant has expressly acknowledged that his lawyer too will be constrained by the proffer letter, the Court does not anticipate any interference with the smooth use of proffer letters in the future, recognizing that it can only be in everyone's interest, prosecution and defense alike, to make certain that waivers of rights are indeed knowing and voluntary.